#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MCCARTHY & COMPANY, P.C.,**<br>Plaintiff, | **CIVIL ACTION** |
| v. | |
| **JOANNE STEINBERG, individually and**<br>**as Executor of the Estate of Harris E. Fox,**<br>**deceased,**<br>Defendant. | **NO. 20-1645** |

**DuBois, J.**                                                                                         **December 28, 2020**

### M E M O R A N D U M

### I.    INTRODUCTION

This case arises out of a sale-of-business agreement and the alleged breach of restrictive covenants in that agreement.  Harris E. Fox, now deceased, agreed to sell his accounting practice to plaintiff, McCarthy & Company, P.C.  Fox bequeathed and assigned his interest in the purchase agreement to defendant, Joanne Steinberg, a former employee of Fox and plaintiff.  Plaintiff claims that defendant improperly solicited and performed accounting services for plaintiff's clients before and after she left plaintiff's employ.  Plaintiff seeks relief against defendant, individually and in her capacity as Executor of the Estate of Harris E. Fox.

Presently before the Court is defendant's Motion to Dismiss the Complaint in Part for failure to state a claim upon which relief can be granted.  For the reasons set forth below, the motion is granted in part and denied in part.

### II.    BACKGROUND

#### A. Asset Purchase Agreement

The facts as alleged in the Complaint, accepted as true for purposes of this motion, are as follows: Plaintiff is a "full-service tax, accounting, and business consulting firm."  Compl. ¶ 10.

In January 2015, plaintiff entered into an Asset Purchase Agreement ("APA") with one of its competitors, Harris E. Fox & Co. ("Seller"), and Harris E. Fox & Co.'s president, Harris E. Fox ("Fox"). *Id.* ¶¶ 15, 16. Plaintiff, Seller, and Fox closed on the APA in or about May 2015. *Id.* ¶ 30.

Under the APA, Seller sold all of its assets, including all of its clients, to plaintiff. *Id.* ¶ 18. The purchase price was 25% of the monthly collections received by plaintiff from Seller's clients over a five-year period (the "Purchase Price"). *Id.* The APA contains restrictive covenants providing that Fox shall not, *inter alia*:

> (a) "[O]ffer to or perform services . . . to any client of [plaintiff] within the last one (1) year period prior to the last payment attributable to the Purchase Price"; or
>
> (b) "[A]ccept employment or any other form of compensation from any individual or business entity: (i) with whom [plaintiff] has performed services; (ii) with whom [plaintiff] has discussed the possibility of performing services within one (1) year prior to the date of termination of employment by Fox for [plaintiff]; or (iii) that is engaged in any business in [Pennsylvania, New Jersey, Delaware or New York] which competes with [plaintiff] as of the date that Fox ceases rendering services of any form to [plaintiff]."

APA ¶¶ 5.03(a)–(b).

Paragraph 5.03 of the APA states that the restrictive covenants shall remain in effect for "three (3) years after the last payment attributable to the Purchase Price is due." *Id.* Paragraph 11.02, on the other hand, states that "[a]ll covenants . . . made by the parties in [the APA] shall survive the Closing hereunder for a period of one year." *Id.* ¶ 11.02. These provisions appear to be in conflict.

### B. Defendant's Solicitation and Performance of Services for Plaintiff's Clients

Under the APA, defendant, a former employee of Seller, "was employed by [plaintiff] as an Accountant . . . ." Compl. ¶ 29. Defendant "remained employed by [plaintiff] . . . until she voluntarily resigned, effective December 2019." *Id.* ¶ 35. Defendant resigned "to start her own

accounting practice and/or become employed as an Accountant by Ehrlich, Alexander, Leibowitz, Gold & Schwartz, P.C. ("Ehrlich")." *Id.* ¶ 36. Ehrlich "competes directly with [plaintiff] . . . throughout the Greater Philadelphia area." *Id.* Before her resignation, defendant "solicited clients that [plaintiff] acquired under the Agreement." *Id.* ¶ 39. Furthermore, after her resignation, defendant "both personally solicited and performed accounting services for clients that were sold to [plaintiff] as part of the Agreement." *Id.* ¶ 38. "To date, [defendant] has failed to cease" engaging in this conduct. *Id.* ¶ 46.

### C. Fox Names Defendant as Executor and Bequests to Defendant His Interests Under the APA

Fox died while the APA was in force. *Id.* ¶ 29. Defendant was named Executor of Fox's Estate. *Id.* Under Fox's will, defendant was "specifically bequeathed and assigned Fox's interests under the Agreement." *Id.* ¶ 25. On December 11, 2019, defendant's counsel sent a letter to plaintiff "demanding additional payment" on the ground that defendant was "specifically bequeathed and assigned" Fox's interests under the APA. *Id.* ¶ 42. "At the same time, however, [defendant] denies that she is obligated to abide by any other term(s) in the Agreement . . . ." *Id.* ¶ 43. Significantly, the APA states that "[t]his Agreement shall be binding upon . . . the parties hereto and their respective successors, permitted assigns and other legal representatives." APA ¶ 11.08.

### D. The Present Action

Plaintiff filed a Complaint on February 13, 2020, asserting the following claims: declaratory judgment that defendant is bound by the APA, materially breached the APA, and is not entitled to payment under the APA (Count 1); breach of contract (Count 2); tortious interference with contractual and business relations (Count 3); misappropriation of trade secrets (Count 4); and breach of the duty of loyalty (Count 5).

On April 3, 2020, defendant filed a Motion to Dismiss the Complaint in Part. In her motion, defendant requests dismissal of Counts 1 and 2 against her as an individual and all Counts against her as Executor. Plaintiff filed its response on April 24, 2020, and defendant filed a reply on May 8, 2020. The motion is thus ripe for decision.

### III.   LEGAL STANDARD

The purpose of a 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint. *Liou v. Le Reve Rittenhouse Spa, LLC*, No. 18-5279, 2019 WL 1405846, at *2 (E.D. Pa. Mar. 28, 2019) (DuBois, J.). To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In assessing the plausibility of a plaintiff's claims, a district court first identifies those allegations that constitute nothing more than mere "legal conclusions" or "naked assertion[s]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 564 (2007). Such allegations are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief. *Id.* at 680. "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

4

## IV. DISCUSSION

In her motion, defendant argues Counts 1 and 2 fail against her both individually and as Executor because plaintiff did not allege defendant was bound by the APA's restrictive covenants. Defendant further contends that Counts 3, 4, and 5 fail against her as Executor because plaintiff "avers no facts that [defendant] took any action on behalf of the Estate." Def.'s Mot. at 5–6. The Court addresses each argument in turn.[1]

### A. Declaratory Judgment and Breach of Contract (Counts 1 and 2)

In Count 1 of the Complaint, plaintiff seeks a declaration that defendant "materially breached" the APA. Compl. ¶ 53. Similarly, in Count 2 of the Complaint, plaintiff alleges that defendant "materially breach[ed] the agreement, including . . . the Restrictive Covenants set forth therein." *Id.* ¶ 59. Counts 1 and 2 both "necessarily depend on the enforcement of [the] terms of [the] contract," and therefore the Court examines them together. Def.'s Mot. at 5 n.1.

#### 1. Counts 1 and 2 Against Defendant as Individual

In its response to defendant's motion, plaintiff argues its allegations are sufficient to state a claim under Counts 1 and 2 on the ground that "the Complaint specifically states that . . . [defendant] was 'specifically bequeathed' and 'assigned' Fox's interests under the Agreement." Pl.'s Resp. at 13 (quoting Compl. ¶ 26).

"Unless the language or the circumstances indicate the contrary . . . an assignment of 'the contract' or of 'all my rights under the contract' . . . is an assignment of the assignor's rights and a delegation of his unperformed duties under the contract." Restatement (Second) of Contracts § 328 (1981); *Art Metal Const. Co. v. Lehigh Structural Steel Co.*, 116 F.2d 57, 59 (3d Cir.

---

[1] The APA states that it "shall be governed by, and construed in accordance with, by and under the laws of the Commonwealth of Pennsylvania." APA ¶ 11.05. The parties do not dispute that Pennsylvania law governs plaintiff's claims in this action.

5

1940). This rule gives effect to the assignor's "probable intention." 29 Williston on Contracts § 74:35 (4th ed. 2020).

Furthermore, "the acceptance by an assignee of such an assignment operates as a promise . . . to perform the assignor's unperformed duties." *USX Corp. v. Adriatic Ins. Co.*, 64 F. Supp. 2d 469, 478 (W.D. Pa. 1998). Acceptance may be inferred from a party's "assent to receive a performance promised" under the contract. 2 Williston on Contracts § 6:43 (4th ed. 2020); *see also* 20 Pa.C.S. § 6206 (acceptance of a bequest "may be inferred from actions of the person entitled to receive an interest in property").

Plaintiff has sufficiently alleged that defendant, as an individual, breached the APA. Plaintiff alleges that: (a) the APA prohibited Fox from offering services to Seller's former clients and accepting employment from plaintiff's competitors; (b) defendant was "assigned Fox's interest under the Agreement"; (c) defendant accepted the assignment of the APA by her assent to receive a performance promised by plaintiff; and (d) defendant "solicited and performed accounting services" for Seller's former clients and accepted employment from Ehrlich, an entity which "competes directly" with plaintiff. Compl. ¶¶ 25, 36, 38.

Defendant argues that the restrictive covenants in the APA cannot bind her as an individual because they (a) were "personal to the performance of Fox"; (b) were not "incident to an employment relationship" between plaintiff and defendant; and (c) under Paragraph 11.02 of the APA, the covenants expired one year after the APA was executed in May 2015, "long before the alleged misconduct occurred." Def.'s Mot. at 14, 16. The Court rejects each of these arguments.[2]

---

[2] Defendant also argues that the restrictive covenants are unenforceable due to a lack of adequate consideration. The Court rejects this argument. The APA was supported by consideration, and defendant was "specifically bequeathed and assigned" Fox's interests under the APA. Compl. ¶ 25.

6

a. Personal Covenants

"[C]ontracts made during a decedent's lifetime are not dissolved by death unless they involve peculiar skills or are based on distinctly personal considerations." *Ress v. Barent*, 378 Pa. Super. 397, 402–03 (1988). In determining whether a contract "involve[s] peculiar skills or [is] based on distinctly personal considerations . . . the intention of the parties at the time the contract is entered into governs." *Ress*, 378 Pa. Super. at 402–03. "The terms of the contract may indicate the parties' intention that a duty may be performed by another." 1 *Corbin on Pennsylvania Contracts* § 75.01 (2020); Restatement (Second) of Contracts § 318 cmt. c (1981) ("[T]he contract may permit delegation where personal performance is normally required.").

The APA states that it "shall be binding upon . . . the parties hereto and their respective successors, permitted assigns and other legal representatives." APA ¶ 11.08. The "terms of the [APA] indicate the parties' intention" that the restrictive covenants "may be performed by another." 1 *Corbin on Pennsylvania Contracts* § 75.01 (2020). The Court concludes that plaintiff has sufficiently alleged that the APA neither "involve[s] peculiar skills" nor is "based on distinctly personal considerations." *Ress*, 378 Pa. Super. at 402–03.[3] Accordingly, defendant, as an individual, may be bound by the restrictive covenants in the APA.

b. Covenants Incident to Sale-of-Business Agreement

"Generally, a restrictive employment covenant may be enforced if it is ancillary to an employment agreement or a contract for the sale of a business . . . ." *Geisinger Clinic v. Di Cuccio*, 414 Pa. Super. 85, 103 (1991). "[A] covenant not to compete which is ancillary to a

---

[3] In her motion, defendant cites two cases—*Hess v. Gebhard & Co.*, 570 Pa. 148 (2002) and *All-Pak, Inc. v. Johnston*, 694 A.2d 347 (Pa. Super. 1997)—which state that restrictive covenants are "in the nature of personal service contracts, unless they include language expressly allowing assignments." *All-Pak*, 694 A.2d at 351; *Hess*, 570 Pa. at 167 ("a restrictive covenant . . . is not assignable . . . in the absence of a specific assignability provision."). As discussed above, the APA provides that it "shall be binding upon . . . the parties hereto and their respective successors, permitted assigns and other legal representatives." APA ¶ 11.08.

7

contract for the sale of a business is subjected to a less rigorous reasonableness examination than those ancillary to an employment contract." *Scobell Inc. v. Schade*, 455 Pa. Super. 414, 420 (1997). "A buy-sell restrictive covenant is enforceable if it is designed to protect the legitimate interests of the purchaser of the business." *Id*. at 420–21. Legitimate interests "that can be protected through covenants include trade secrets, confidential information, good will, and unique or extraordinary skills." *Hess v. Gebhard & Co.*, 570 Pa. 148, 163 (2002).

Plaintiff alleges that: (a) it is a "full-service tax, accounting, and business consulting firm"; (b) under the APA, Seller "sold all of its assets" to plaintiff; (c) defendant "was employed by [plaintiff] as an Accountant"; and (d) plaintiff has an "interest in protecting its client relationships and the goodwill that it acquired" under the APA. Compl. ¶¶ 10, 18, 29, 58. Based on these allegations, plaintiff has sufficiently alleged that the APA is "a contract for the sale of business" and "it is designed to protect [plaintiff's] legitimate interests." *Geisinger Clinic*, 414 Pa. Super at 103. Therefore, the Court concludes that plaintiff has sufficiently alleged the APA is enforceable against defendant, as an individual.

    c. <u>Expiration of Covenants</u>

As discussed *supra*, Paragraph 11.02 of the APA states that "[a]ll covenants . . . made by the parties in [the APA] shall survive the Closing hereunder for a period of one year." APA ¶ 11.02. Paragraph 5.03 of the APA, on the other hand, states that the restrictive covenants shall remain in effect for "three (3) years after the last payment attributable to the Purchase Price is due." *Id.* ¶ 5.03.

Where the terms of the contract are unambiguous "the court will interpret the contract as a matter of law." *Hullett v. Towers, Perrin, Forster & Crosby*, 38 F.3d 107, 111 (3d Cir. 1994). "If the contract is determined to be ambiguous, then the interpretation of the contract is left to the

factfinder, to resolve the ambiguity in light of extrinsic evidence." *Id.* The test for ambiguity is whether "the words of the contract are capable of more than one objectively reasonable interpretation." *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 76 (3d Cir. 2011).

The words of the APA stating the expiration date of the restrictive covenants "are capable of more than one objectively reasonable interpretation." *Baldwin*, 636 F.3d at 76. The Court thus cannot determine at this stage of the proceedings whether, as defendant asserts, the restrictive covenants "expired long before the alleged misconduct occurred."[4] Def.'s Mot. at 14.

Therefore, defendant's motion is denied to the extent it seeks dismissal of Counts 1 and 2 of the Complaint against defendant as an individual.

### 2. Counts 1 and 2 Against Defendant as Executor

"An executor's duty is to take custody of the estate and to administer it so as to preserve and protect the property for distribution to the proper persons within a reasonable time." *In re Estate of Campbell*, 692 A.2d 1098, 1101 (Pa. Super. 1997). However, an executor has no duty to "carry on a business conducted by the decedent." *In re Estate of Kurkowski*, 487 Pa. 295, 301 (1979). Furthermore, "unless the will provides otherwise," an executor is not "chargeable with the cost of preserving the property" specifically bequeathed by the decedent. 6 Page on Wills § 59.15 (2020); *In re Will of Boerner*, 294 N.Y.S.2d 725, 727 (Surr. Ct. Yates Cty. 1968) ("a legatee of a specific bequest must take it as and where it is and must pay any shipping or storing charges or liens then against it"); *see also* 20 Pa.C.S. § 2514 ("in the absence of contrary

---

[4] Defendant argues that, "under the rule of contra proferentem . . . any ambiguity regarding the temporal period of the Restrictive Covenant should be resolved in her favor." Def.'s Mot. at 15. The Court rejects this argument on the present state of the record. The Complaint does not state either that (a) plaintiff drafted the APA or that (b) the APA was not "the result of the joint efforts of negotiators." *Kozura v. Tulpehocken Area Sch. Dist.*, 568 Pa. 64, 72 n.8 (2002) ("The principle that a contractual ambiguity is to be construed against the drafter does not apply where . . . the contract is the result of the joint efforts of negotiators.").

intent appearing" in the will, a specific bequest "passes [the] property [to the beneficiary] subject to any security interest therein existing at the date of the testator's death").

Plaintiff alleges that Fox's interests under the APA were specifically bequeathed and assigned to defendant, as an individual. The Complaint does not state that defendant was responsible for the duties imposed by the APA in her capacity as Fox's Executor. Accordingly, plaintiff has not sufficiently alleged that defendant, in her capacity as Executor, breached the APA.

Therefore, defendant's motion is granted to the extent it seeks dismissal of Counts 1 and 2 of the Complaint against defendant as Executor.

### B. Tortious Interference (Count 3)

In Count 3 of the Complaint, plaintiff alleges that defendant "intentionally interfered with [plaintiff's] legal rights under the Agreement by soliciting and performing accounting services for the very clients that [plaintiff] acquired under the Agreement." Compl. ¶ 67.

To state a claim for tortious interference with existing or prospective contractual relations, a plaintiff must allege:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party;
>
> (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;
>
> (3) the absence of privilege or justification on the part of the defendant; and
>
> (4) the occasioning of actual legal damage as a result of the defendant's conduct.

*CGB Occupational Therapy v. RHA Health Servs.*, 357 F.3d 375, 384 (3d Cir. 2004). Therefore, "a tortious interference claim cannot be asserted against a party to the contract." *Kernaghan v. BCI Communs. Inc.*, 802 F. Supp. 2d 590, 596 (E.D. Pa. 2011).

An executor "stands in the shoes of the decedent." *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 248 n.7 (3d Cir. 2002). Thus, where the decedent was a party to a contract, a plaintiff cannot state a claim against the executor of the decedent's estate for tortious interference with that contract. *Culwick v. Wood*, 384 F. Supp. 3d 328, 352 (E.D.N.Y. 2019) ("Because the Estate stands in the shoes of the decedent—a party to the contract—the Estate may not be sued for tortious interference."). Furthermore, "any tort committed by [an executor] . . . renders him as an individual, and not the estate, liable in damages, except where the estate has derived pecuniary advantage from the [executor's] tortious act." *Miller v. Jacobs*, 361 Pa. 492, 495 n.1 (1949).

Plaintiff alleges that the decedent, Fox, was a party to the APA. Therefore, defendant "may not be sued for tortious interference" in her capacity as Fox's Executor. *Culwick*, 384 F. Supp. 3d at 352. Moreover, plaintiff does not allege that "the estate has derived pecuniary advantage from" defendant's alleged tortious interference. *Miller*, 361 Pa. at 495 n.1. Plaintiff thus fails to state a claim under Count 3 of the Complaint against defendant as Executor.

### C.  Misappropriation of Trade Secrets (Count 4)

In Count 4 of the Complaint, plaintiff alleges that defendant "has used [its] trade secrets . . . without express or implied consent for her own benefit, and in particular, for the purpose of stealing and providing competing services to [plaintiff's] clients . . . ." Compl. ¶ 73.

"A person has misappropriated a trade secret under Pennsylvania law when he acquires knowledge of another's trade secret in circumstances giving rise to a duty to maintain its confidentiality and then discloses or uses that trade secret without the other's consent." *Bimbo Bakeries USA. v. Botticella*, 613 F.3d 102, 109 (3d Cir. 2010) (citing 12 Pa.C.S. § 5302). As discussed *supra*, "any tort committed by [an executor] . . . renders him as an individual, and not

11

the estate, liable in damages, except where the estate has derived pecuniary advantage from the [executor's] tortious act." *Miller*, 361 Pa. at 495 n.1.

Plaintiff does not allege that "the estate has derived pecuniary advantage from" defendant's alleged misappropriation of trade secrets. *Miller*, 361 Pa. at 495 n.1. Therefore, plaintiff fails to state a claim under Count 4 of the Complaint against defendant as Executor.

### D. Duty of Loyalty (Count 5)

In Count 5 of the Complaint, plaintiff alleges that defendant "owed a duty of loyalty to [plaintiff] as its employee," and breached that duty "by soliciting [plaintiff's] clients, including those acquired by [plaintiff] under the Agreement, for her own benefit . . . ." Compl. ¶¶ 81, 82.

The duty of loyalty requires an agent to "act with the utmost good faith in the furtherance and advancement of the interests of his principal." *Sylvester v. Beck*, 406 Pa. 607, 610 (2010). "[I]n order to state a claim of a breach of duty of loyalty a plaintiff must allege that his agent acted for a person or entity whose interests conflicted with the plaintiff." *Ozburn-Hessey Logistics v. 721 Logistics*, No. 12-864, 2012 WL 12896257, at *5 (E.D. Pa. Sept. 6, 2012). An agent is "[s]omeone who is authorized to act for or in the place of another; a representative." *United States ex rel. Forney v. Medtronic, Inc.*, 327 F. Supp. 3d 831, 842 (E.D. Pa. 2018) (quoting *Agent*, Black's Law Dictionary (10th ed. 2014)).

The Complaint does not state that defendant, in her capacity as Executor, was plaintiff's "agent." *Ozburn-Hessey Logistics*, 2012 WL 12896257, at *5. Furthermore, plaintiff does not allege that "the estate has derived pecuniary advantage from" defendant's alleged breach of the duty of loyalty. *Miller*, 361 Pa. at 495 n.1. Plaintiff thus fails to state a claim under Count 5 of the Complaint against defendant as Executor.

## V. CONCLUSION

For the foregoing reasons, defendant's Motion to Dismiss the Complaint in Part is granted in part and denied in part. The motion is denied to the extent it seeks dismissal of Counts 1 and 2 of the Complaint against defendant as an individual. The motion is granted to the extent it seeks dismissal of all Counts against defendant as Executor. An appropriate order follows.